372 So.2d 927 (1979)
John A. SPENKELINK, Petitioner,
v.
Louie L. WAINWRIGHT, Director, Florida Department of Corrections, Respondent.
No. 56941.
Supreme Court of Florida.
May 25, 1979.
Howell L. Ferguson and Steven Goldstein, Tallahassee, for petitioner.
Jim Smith, Atty. Gen., and Raymond Marky, Asst. Atty. Gen., Tallahassee, for respondent.
PER CURIAM.
Petitioner in this cause filed at 7:35 a.m. today a Petition for Writ of Habeas Corpus and an Application for Stay of Execution. These having been duly considered by the Court in emergency session after counsel for both sides were accorded oral argument, it was ordered at 9:28 a.m. that the Petition and the Stay be denied.
While still convened in emergency session, a Motion to Intervene as Amicus Curiae and to present a petition for review of sentence and an application for stay was filed by telephone with Chief Justice England and Justices Adkins and Boyd by Cheney Mason, Esquire, 127 N. Magnolia, Orlando, Florida.
The gravamen of the petition appeared to be a suggestion that the process by which executions are carried out in Florida is unconstitutional (i) as violative of due process of law, inasmuch as no rules have been promulgated by the Department of Corrections under the administrative procedures act, and (ii) in that the legislature has unduly delegated legislative authority to the Department. Counsel for both sides were given an opportunity to comment on these matters. The Court then duly considered the petition, application, and motion, and at 9:35 a.m. the Motion to Intervene as Amicus Curiae was denied.
Counsel for petitioner promptly made an oral motion for a stay and a request for review of petitioner's sentence on the same grounds urged by Mr. Cheney. The Court having considered these matters, both were at 9:48 a.m. denied.
ENGLAND, C.J., and ADKINS, BOYD, SUNDBERG and HATCHETT, JJ., concur.
ALDERMAN, J., concurs specially with an opinion, with which ADKINS, J., concurs.
OVERTON, J., although not participating in this decision, was in telephone communication with the other justices throughout the proceedings on this date.
ALDERMAN, Justice, concurring specially.
I agree with the holding of the majority opinion; however, I take this opportunity to express my view of the questionable practice of waiting until a death warrant is signed by the governor to file petitions raising matters which could have been brought to the Court's attention months or even *928 years before the warrant is signed. Such conduct, in my opinion, is an abuse of the judicial process.
John Spenkelink was convicted of murder in the first degree and was sentenced to death in December, 1973. This Court upheld his judgment and sentence on May 8, 1975. Spinkellink v. State, 313 So.2d 666 (Fla. 1975). Certiorari was thereafter sought in and denied by the Supreme Court of the United States. Spenkelink v. Florida, 428 U.S. 911, 96 S.Ct. 3327, 49 L.Ed.2d 1221 (1976). In September, 1977, after the governor issued a death warrant for Spenkelink, Spenkelink sought post-conviction relief in the trial court pursuant to Florida Rule of Criminal Procedure 3.850, raising matters which properly could have and should have been raised before the signing of the death warrant. We found these matters to be without merit and affirmed the trial court's denial of post-conviction relief. Spenkelink v. State, 350 So.2d 85 (Fla. 1977). We also denied the motion for stay of execution. The Supreme Court of the United States denied certiorari. Spenkelink v. Florida, 434 U.S. 960, 98 S.Ct. 492, 54 L.Ed.2d 320 (1977). After the death warrant was signed, Spenkelink also filed a petition for writ of habeas corpus in the federal district court which alleged the same grounds as those raised in the state courts. This petition was denied, and the Fifth Circuit Court of Appeals affirmed the denial of the petition for writ of habeas corpus. Spinkellink v. Wainwright, 578 F.2d 582 (1978). The Supreme Court of the United States denied certiorari. Spinkellink v. Wainwright, ___ U.S. ___, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).
In April, 1979, Spenkelink filed yet another motion to vacate in the trial court, alleging that the State failed to prove premeditation, that his death sentence is disproportionate to his crime and to sentences imposed in similar cases, and that the death penalty statute is unconstitutional because it attempts to govern practice and procedure. This motion was denied, and on May 10, 1979, he filed an appeal from the order of denial of the motion to vacate. A second death warrant was signed on May 18, 1979, after which he moved for a stay of execution. On May 21, 1979, we denied the stay and affirmed the trial court's order denying the order to vacate, set aside, or correct sentence. On this same date, he filed another habeas corpus petition with the federal district court. The federal district court, on May 21, 1979, dismissed the petition, denied an application for stay of execution, and denied an application for certificate of probable cause. On May 22, 1979, the Fifth Circuit Court of Appeals denied his request for application for certificate of probable cause and application for stay pending appeal. An application for stay of execution was thereafter filed with the Supreme Court of the United States on May 22, 1979. Justice Marshall granted the stay of execution until May 24, 1979. This stay was subsequently vacated by the Supreme Court of the United States. Judge Tuttle of the Fifth Circuit Court of Appeals had also been requested to grant a stay of execution, which he did. This stay, however, was vacated by order of the Fifth Circuit Court of Appeals effective 9:30 a.m., May 25, 1979. A final, desperate, last-minute attempt to stay the execution was made by Spenkelink when he sought review of the Fifth Circuit's action. The Supreme Court of the United States denied this final request for relief.
At 7:35 a.m. on May 25, 1979, the date the execution was scheduled to take place, Spenkelink filed a petition for writ of habeas corpus with this Court, alleging that he was entitled to mitigation of sentence because of the failure of this Court on direct appeal to consider a mitigating factor and because this Court failed to consider the complete record of all the proceedings in the trial court. While the Court was convened in emergency session to consider this habeas corpus petition which raised matters which should have been raised long before and were completely without merit, a motion to intervene as amicus curiae and to present a petition for review of sentence and application for stay, the gravamen of which is stated in the majority opinion, was filed by telephone at the last minute. This *929 final petition also alleged grounds which should have been raised long before the "eleventh hour," and which, in any event, were without merit.
Spenkelink has abused the writ of habeas corpus and judicial process in general by these last-minute, frivolous attempts to stay the inevitable execution by the filing of matters which should have been raised, if at all, long before the death warrant was signed.
The federal court system proscribes the abuse of the writ by placing stringent requirements on the successive filings of petitions for writ of habeas corpus. 28 U.S.C. § 2244(b) provides:
(b) When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ. (Emphasis supplied.)
See Johnson v. Massey, 516 F.2d 1001 (5th Cir.1975).
Even prior to the adoption of this provision relating to abuse of the writ, the Supreme Court of the United States in Sanders v. United States, 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), stated:
[I]f a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. The same may be true if, as in Wong Doo, [265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999], the prisoner deliberately abandons one of his grounds at the first hearing. Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.
We need not pause over the test governing whether a second or successive application may be deemed an abuse by the prisoner of the writ or motion remedy. The Court's recent opinions in Fay v. Noia, supra, 372 U.S., at 438-440, 83 S.Ct., at 848, 849, and Townsend v. Sain, supra, 372 U.S., at 317, 83 S.Ct., at 760, 761, deal at length with the circumstances under which a prisoner may be foreclosed from federal collateral relief. The principles developed in those decisions govern equally here.
.....
In Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Supreme Court explained that habeas corpus traditionally has been governed by equitable principles among which is the principle that "a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." 372 U.S. at 438, 83 S.Ct. at 849.
The federal rule is sound. A death row inmate who deliberately withholds one of two or more arguable points for collateral relief at the time he files his first petition, in an attempt to thwart the judicial process and to gain a temporary stay of execution, should not be entitled to consideration of any such late-filed petitions.
The matters raised by the present petitions reasonably could have been raised prior to the signing of the death warrant and appear to be matters that were held until the last minute in the hopes of obtaining another stay of execution. As Justice Rehnquist stated in Evans v. Bennett, ___ U.S. ___, 99 S.Ct. 1481, 1485, 59 L.Ed.2d 756, 761 (1979), (an opinion of a Justice in chambers):

*930 To use the technique of a last minute filing as a sort of insurance to get at least a temporary stay when an adequate application might have been presented earlier, is, in my opinion, a tactic unworthy of our profession. Such an explanation is not a condition of the granting of this or any further stay, but the absence of it will be taken into consideration by me.
.....
Justice Rehnquist further declared:
There must come a time, even when so irreversible a penalty as that of death has been imposed upon a particular defendant, that the legal issues in the case have been sufficiently litigated and relitigated so that the law must be allowed to run its course. If the holdings of our Court in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), and Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), are to be anything but dead letters, capital punishment when imposed pursuant to the standards laid down in those cases is constitutional; and when the standards expounded in those cases and in subsequent decisions of this Court bearing on those procedures have been complied with, the State is entitled to carry out the death sentence. Indeed, just as the rule of law entitles a criminal defendant to be surrounded with all the protections which do surround him under our system prior to conviction and during trial and appellate review, the other side of that coin is that when the State has taken all the steps required by that rule of law, its will, as represented by the legislature which authorized the imposition of the death sentence, and the state courts which imposed it and upheld it, should be carried out.
.....
___ U.S. at ___, 99 S.Ct. at 1482-1483, 59 L.Ed.2d at 759.
Accordingly, I concur in the denial of the requested relief not only because it is without merit but also because it comes too late.
ADKINS, J., concurs.