390 So.2d 847 (1980)
STATE of Louisiana
v.
Walter CULBERTH, Jr.
No. 66728.
Supreme Court of Louisiana.
November 10, 1980.
*848 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Thomas Chester, Asst. Dist. Attys., for plaintiff-appellee.
Orleans Indigent Defender Program, Robert J. Zibilich, Dwight Doskey, New Orleans, for defendant-appellant.
DIXON, Chief Justice.
On November 5, 1978 Annie Simms was walking with two companions, George Blanks and Warren Minor, toward a bus stop at the corner of Washington and South Claiborne Avenues. The defendant called her, and she walked back toward him. After a few moments the two men turned around to look for Annie, and saw the defendant stabbing her. When Minor approached, the defendant came toward him with his knife and said, "You're next." Minor threw a bottle at the defendant, and retreated behind a car. The defendant returned to the victim and stabbed her again. She died enroute to the hospital. The defendant confessed to the police and was charged with first degree murder. (R.S. 14:30). After a bifurcated trial held on May 30, 1979, a unanimous jury found him guilty as charged and recommended the death penalty.
Defense counsel contests the trial judge's denial of the motion for mistrial he made in chambers. Defense counsel believes that remarks made by the prosecutor in his rebuttal argument called attention to the defendant's failure to take the stand and therefore justify a mistrial under C.Cr.P. 770(3). We do not believe that the prosecutor's comments can be construed as direct or indirect references to the defendant's failure to testify. Defense counsel's argument that the prosecutor's comment *849 "there was no dispute as to the State's case" is an unmistakable reference to the failure to take the stand also lacks merit. This remark is merely a reference to the fact that the defense presented no witnesses.
Defense counsel also calls for a mistrial under C.Cr.P. 775. He alleges that the prosecutor's remarks[1] regarding the defendant's conduct at trial and his appeal for sympathy for the victim's brother violated C.Cr.P. 774's admonition to counsel not to appeal to prejudice. The trial judge thought the prosecutor's remarks about the victim's brother were logical inferences from the testimony, and he admonished the jury to disregard the state's comments about the defendant's conduct sufficiently to correct any error that might have existed.
Sentence Review
In Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the United States Supreme Court approved the Georgia sentencing scheme which serves as the model for our sentencing procedure. (C.Cr.P. 905-905.9). To ensure that the death penalty is not arbitrarily or capriciously imposed, C.Cr.P. 905.9 requires this court to review every sentence to determine if it is excessive. Louisiana Supreme Court Rule 28, adopted pursuant to that article, states that in its review this court shall evaluate:
". . .
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
Passion, Prejudice or Other Arbitrary Factors
Defendant also alleges that the jury's finding of a nonexistent aggravating circumstance constituted prejudicial error, as it could have influenced the jury to recommend the death sentence. In his view, due process requires that an accused be given the opportunity to dispel false information which might influence a court or jury to impose a severe sentence. State v. Trahan, 367 So.2d 752 (La.1978); State v. Bosworth, 360 So.2d 173 (La.1978). At the sentencing hearing both parties stipulated that the defendant had three prior convictions, aggravated battery, theft and manslaughter. The jury apparently misunderstood the stipulation and returned with a finding of three aggravating circumstances, including a finding that the defendant had a previous conviction for an unrelated murder. A portion of the prosecutor's speech in the sentencing phase of the trial might have contributed to the jury's misunderstanding. In examining possible mitigating circumstances, the prosecutor said of the defendant:
"... He has a prior conviction for manslaughter of which he was on parole, released early, at the time this murder-first degree murder was committed. He had already killed a human being.... In addition to that, he has a prior aggravated battery by stabbing. Fortunately, this person wasn't stabbed to death, but this victim in the aggravated battery was stabbed. So on two prior occasions his *850 violent propensities had shown through and he killed somebody in one instance and the other instance he stabbed a person. So he hadn't learned anything from his two prior confrontations with the law. In addition to that he had a felony theft conviction.... I submit to you that this isn't a man who deserves a chance...." (Emphasis added).
At trial defense counsel did not object to these remarks nor to the two aggravating circumstances urged by the state and found by the jury. However, he did refuse to accept the finding of an unrelated murder conviction, noting that he had stipulated to a conviction for manslaughter, not murder, and that the statute specified murder.
Defense counsel now contends that none of the three aggravating circumstances found by the jury is supported by the record. Ordinarily, an objection which is not argued at trial is considered waived; however, since this court is empowered by the Louisiana Code of Criminal Procedure to undertake an independent review of all death sentences, defense counsel's failure to object contemporaneously is not fatal. State v. Sonnier, 379 So.2d 1336 (La.1980). We believe that the prosecutor's comments were prejudicial and may have contributed to the jury's error. However, none of the aggravating circumstances cited by the jury is adequately supported by the record.
Statutory Aggravating Circumstances
C.Cr.P. 905.3 states that the death sentence can only be imposed if the jury finds beyond a reasonable doubt that at least one of the statutory aggravating circumstances set out in C.Cr.P. 905.4 is present.[2] In every case where the death sentence is recommended this court must determine whether the aggravating circumstances cited by the jury are supported by the evidence. In this case, the state listed two aggravating circumstances supporting the death penalty. It contended that the defendant, by threatening Minor when he tried to intercede on the victim's behalf, knowingly created a risk of death or great bodily harm to more than one person. It also asserted that the infliction of five stab wounds on the helpless victim constituted an especially heinous, atrocious or cruel manner of killing. The jury found both these grounds, as well as the third mentioned above-prior conviction of an unrelated murder.
The record indicates that the defendant was not convicted of an unrelated murder; he was originally charged with murder but pleaded guilty to manslaughter.
The evidence also does not support the conclusion that the defendant knowingly created a risk of death or great bodily harm to more than one person. In State v. English, 367 So.2d 815 (La.1979), this court stated that this aggravating circumstance is established when the defendant by a single and consecutive course of conduct contemplates and causes a great risk to more than one person. In this case, the defendant did not injure or kill anyone other than the victim. Although he told Minor "you're next" when Minor approached him with a bottle, he did not pursue Minor when the latter ran behind a car. Instead he returned to stab the victim again. He did not attack anyone after the incident. The testimony *851 of other witnesses also indicates that the defendant intended only to kill the victim.
Neither does the record support the finding that the offense was committed in an especially heinous, atrocious or cruel manner. Obviously, it was not intended that all murders fall in this category, even though it can be said that murder, itself, is a heinous, atrocious and cruel crime. We have stated that the concept of heinousness must necessarily include "some idea of torture or the pitiless infliction of unnecessary pain on the victim." State v. English, supra, at 823. Such a construction is necessary to protect the statute from attack on grounds of vagueness and overbreadth and to provide adequate guidelines for those involved in the sentencing process. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).[3] In this case the defendant did not torture or abuse the victim before her death. The wounds were inflicted to kill, not to maim or to inflict pain.
Since there is no reversible error in the guilt phase of the trial, the conviction is affirmed. Since none of the aggravating circumstances is supported by the record, the sentence is reversed and the case is remanded for resentencing.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
I concur in the affirmance of the conviction. I dissent from the reversal of the sentence as I consider that the record supports a finding that the offense was committed in an "especially heinous, atrocious or cruel manner." As I interpret Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), an offense is considered to have been committed in an especially heinous, atrocious or cruel manner if there is evidence of serious physical abuse of the victim before death. In the instant case, defendant stabbed the victim several times causing her to suffer physical injury and then stopped to threaten a would be rescuer. When the rescuer retreated behind a car, defendant returned to the victim and stabbed her again. While the victim's wounds later proved to be fatal, she did not die instantly as did the victims in Godfrey, but rather suffered until she expired enroute to the hospital. Hence, I consider that an aggravating circumstance did exist.
NOTES
[1] Defense counsel objected to these comments:

"... And there's something else you can look to in this trial, and it infuriated me during this trial, and I think it infuriated you. Did you see that murderer's attitude (pointing to the defendant) during the course of that trial? Did you see him laugh and snicker, thinking this was a joke, while the witnesses were on the stand? He thinks this is an actual joke. He thinks it's funny that Annie Simms is dead, that he stabbed her to death all those times. Well I don't think it's funny, and with the homicide in this city, none of you should think it's funny.... It's time to say, `we've had enough of this foolishness, ... and Walter Culberth, we've had enough.' This is a first degree murder and if there's any sympathy in this case, it's for the victim whose brother had to come in and identify her body today; it's not going to be for the murderer because we've had enough of these homicides."
[2] "The following shall be considered aggravating circumstances:

(a) The offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, or armed robbery;
(b) The victim was a fireman or peace officer engaged in his lawful duties;
(c) The offender was previously convicted of an unrelated murder, aggravated rape, or aggravated kidnapping;
(d) The offender knowingly created a risk of death or great bodily harm to more than one person;
(e) The offender offered or has been offered or has given or received anything of value for the commission of the offense;
(f) The offender at the time of the commission of the offense was imprisoned after sentence for the commission of an unrelated forcible felony;
(g) The offense was committed in an especially heinous, atrocious or cruel manner." C.Cr.P. 905.4.
[3] See Godfrey v. Georgia, 446 U.S. 420, 426-429, 100 S.Ct. 1759, 1764-1765, 64 L.Ed.2d 398, 406 (1980), where the United States Supreme Court recently reversed a death sentence based on a jury's finding that the offense was outrageously or wantonly vile. The defendant had killed his wife and mother-in-law with a shotgun and injured his daughter. The Supreme Court held that the offense did not involve the depravity of mind, torture, or aggravated battery required to support a finding of this aggravating circumstance. The Court reaffirmed that states must tailor their law "in a manner that avoids the arbitrary and capricious infliction of the death penalty" and "channel the sentencer's discretion by `clear and objective standards.'"