No. 82–5590. MILLER v. FLORIDA. Sup. Ct. Fla. Motion of Florida Public Defenders Association, Inc., for leave to file a brief as *amicus curiae* granted. Certiorari denied.

JUSTICE BRENNAN, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg v. Georgia*, 428 U. S. 153, 227 (1976), I would grant certiorari and vacate the death sentence in this case.

JUSTICE MARSHALL, dissenting.

I continue to adhere to my view that the death penalty is unconstitutional under all circumstances. I would therefore grant certiorari and vacate the death sentence on this basis alone. However, even if I accepted the prevailing view that the death penalty can constitutionally be imposed under certain circumstances, I would grant certiorari in this case to consider whether a trial judge may reject a jury's recommendation of life imprisonment and impose the death sentence based in part on a different jury's recommendation that the defendant's accomplice be sentenced to death.

Petitioner Ernest Lee Miller and his stepbrother, William Riley Jent, were indicted for first-degree murder. Following trials before the same judge but before separate juries, both defendants were found guilty. The trials were followed by hearings at which each jury was directed to consider "[w]hether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and . . . [b]ased on these considerations, whether the defendant should be sentenced to life imprisonment or death." Fla. Stat. §§ 921.141(2)(b) and (c) (1981). The jury that heard petitioner's case recommended life imprisonment, but in Jent's case the jury recommended a death sentence.

Under the Florida capital sentencing procedure, the jury's sentencing decision is only advisory; the actual sentence is

determined by the trial judge. Here the judge who conducted both trials sentenced both petitioner and his accomplice Jent. In the case of Jent, the judge accepted the jury's recommendation and imposed a death sentence.

In the case of petitioner, the judge was faced with a jury recommendation of life imprisonment. Under Florida law, a sentencing judge can reject such a recommendation only if "'the facts suggesting a sentence of death [are] so clear and convincing that virtually no reasonable person could differ.'" *Proffitt* v. *Florida*, 428 U. S. 242, 249 (1976), quoting *Tedder* v. *State*, 322 So. 2d 908, 910 (Fla. 1975). In deciding to impose the death sentence despite the jury's recommendation, the judge relied heavily on the fact that in Jent's case the jury recommended a death sentence:

> "The United States Supreme Court has determined that if the death penalty is to be imposed by the states, the United States Constitution demands that it be imposed with regularity, rationality and consistency.
>
> "The jury for the defendant Jent has recommended death and this court finds that the weight of the aggravating and mitigating circumstances demand death sentences for both defendants. Therefore, if the recommendation of the jury for the defendant Miller were followed, that would result in two co-perpetrators who participated equally in a crime having disparate sentences. It would cause a hollow ring in the Florida halls of justice if the sentences in these cases were not to be equalized." Findings in Support of Sentences 6 (citations omitted).
>
> "The goal in the law is regularity or uniformity in the application of those available sentences. Now, the Court, our Supreme Court in Florida has also said that . . . [the fact that] two coperpetrators who participated equally in the crime would have [disparate] sentences if the jury recommendation were to be accepted has to be a strong consideration." Tr. 16–17.

In sentencing petitioner to death, the judge expressly relied on the recommendation made by a different jury following the separate trial of a different defendant. There is much force to petitioner's contention that this reliance on the recommendation made by Jent's jury was inconsistent with the judge's constitutional duty to decide whether to impose a death sentence on the basis of an "objective consideration of the *particularized* circumstances of the individual offense *and the individual offender." Jurek* v. *Texas,* 428 U. S. 262, 274 (1976) (joint opinion of Stewart, POWELL, and STEVENS, JJ.) (emphasis added). See, *e. g., Eddings* v. *Oklahoma,* 455 U. S. 104, 110–112 (1982); *Lockett* v. *Ohio,* 438 U. S. 586, 606 (1978) (plurality opinion); *Roberts* v. *Louisiana,* 431 U. S. 633, 637 (1977) *(per curiam); Woodson* v. *North Carolina,* 428 U. S. 280, 303–304 (1976) (plurality opinion of Stewart, POWELL, and STEVENS, JJ.). Our cases make clear that in capital cases "[t]he fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender." *Woodson* v. *North Carolina, supra,* at 304.

Although it is impossible to determine the precise extent to which the recommendation of the jury in Jent's case persuaded the judge to minimize or disregard the differences between petitioner and Jent,* it is undeniable that the judge

---

*Petitioner had no history of prior criminal activity. In addition, a clinical psychologist testified that petitioner did not have a violent nature, but had "basically a dependent personality." The psychologist testified that petitioner had come under the negative influence of Jent but would respond positively to the influence of "a stronger person [who] is a favorable, community oriented individual." The trial judge gave no weight to this testimony. If the judge who sentenced petitioner had not also sentenced Jent, or if the jury had recommended life imprisonment for Jent, the judge may well have been willing to take this testimony into account.

The court also declined to admit additional testimony offered by the clinical psychologist regarding petitioner's capacity for rehabilitation. The court's exclusion of such mitigating evidence may itself have been a viola-

allowed that recommendation to influence his choice of petitioner's sentence. There is, at the very least, a substantial question whether the judge thereby relied on a constitutionally impermissible consideration, for the jury that recommended a death sentence for Jent heard none of the mitigating evidence presented by petitioner, and petitioner had no opportunity to challenge the evidence and arguments presented by the State in Jent's trial and sentencing proceeding.

In my view, the trial judge in this case confused his inquiry as sentencer with that undertaken by an appellate court in determining whether a sentence of death was warranted. An appellate court, in the performance of the reviewing function which this Court has held indispensable to a constitutionally acceptable capital punishment scheme, must examine the sentences imposed in all capital cases in the jurisdiction in order "to ensure that similar results are reached in similar cases." *Proffitt* v. *Florida, supra,* at 258 (joint opinion of Stewart, POWELL, and STEVENS, JJ.). See also, *e. g., Godfrey* v. *Georgia,* 446 U. S. 420, 433 (1980) (plurality opinion). The sentencer has a different role. The sentencer's duty is to determine in the first instance whether a death sentence is warranted for a particular defendant. That determination can only be made on the basis of the evidence that the judge has heard with respect to that defendant, and, under the Florida procedure, on the recommendation made by the jury that heard that evidence. A capital sentencing determination cannot properly be made on the basis of evidence presented in another trial or a recommendation made by another jury.

---

tion of due process. The sentencer may "not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record . . . that the defendant proffers as a basis for a sentence less than death." *Lockett* v. *Ohio,* 438 U. S. 586, 604 (1978) (plurality opinion) (emphasis in original) (footnotes omitted). See *Eddings* v. *Oklahoma,* 455 U. S. 104, 110–112 (1982).

It is no answer to say that a sentencing judge's failure to consider the recommendations made by juries in other cases will make it difficult or impossible to produce a rational pattern of sentences. If this is true, the fault lies in the capital sentencing scheme itself. The remedy is not to deny a defendant the individualized consideration to which he is entitled, but to review the sentences that are actually imposed and to set aside death sentences in those cases that cannot be distinguished from cases in which life sentences were imposed.