### Timothy George BALDWIN

v.

### Frank C. BLACKBURN, Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General, State of Louisiana.

#### Civ. A. No. 81–0554.

United States District Court,
W. D. Louisiana,
Monroe Division.

April 28, 1981.

On Motion For Certificate of Probable Cause and For Stay May 1, 1981.

Cora Schley, Alexandria, La., Calvin Johnson, Dwight Doskey, New Orleans, La., for plaintiff.

John R. Harrison, Asst. Dist. Atty., Monroe, La., for defendants.

## OPINION

NAUMAN S. SCOTT, Chief Judge.

### I. BACKGROUND

Timothy George Baldwin was convicted by a jury in the Fourth Judicial District Court, Ouachita Parish, Louisiana, of first degree murder for the robbing and heinous beating to death of an 85 year old woman. The attack was effectuated by the use of various objects in the victim's home. She was found semi-conscious the next morning and taken to a nearby hospital where she died the following day of head injuries. At the sentencing phase of the trial, the jury found two statutory aggravating circumstances,[1] considered the statutory mitigat-

---

1. The statutory lists of aggravating and mitigating circumstances were presented to the jury as provided for in Louisiana Code of Crim-

ing circumstances and unanimously recommended the death penalty—a verdict binding upon the trial court. This process comports with Louisiana Code of Criminal Procedure art. 905 *et seq.*

Baldwin's conviction and sentence were appealed to and affirmed by the Louisiana Supreme Court. *State v. Baldwin*, 388 So.2d 664 (La.1980). Petitioner's execution was stayed by that court pending an appeal to the United States Supreme Court, which denied the Writ of Certiorari, *Baldwin v. Louisiana*, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981), and Petition for Rehearing. *Baldwin v. Louisiana*, 450 U.S. 971, 101 S.Ct. 1493, 67 L.Ed.2d 622 (1981). The stay was dissolved. Thereafter, the trial court signed Baldwin's death warrant and set the execution for March 31, 1981, between 12:00 o'clock midnight and 3:00 o'clock A.M. Baldwin then filed an application for a Stay of Execution and an Application for a Writ of Habeas Corpus in the Fourth Judicial District Court. These applications were denied for lack of jurisdiction on March 26, 1981. An Application for a Stay of Execution and for Review of an Application for Post-Conviction Relief were denied by the Louisiana Supreme Court without written reasons on March 27, 1981. Baldwin next sought a stay of execution and an Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 on March 27, 1981, before this court.

Considering the time constraints[2] and the facial substantiality of petitioner's claims, we stayed the execution pending our deter-mination of the merits. See *Rosenburg v. United States*, 346 U.S. 273, 288, 73 S.Ct. 1152, 97 L.Ed. 1607 (1953) *(per curiam); see also Evans v. Bennett*, 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979); *Shaw v. Martin*, 613 F.2d 487, 491–492 (4th Cir., 1980).

## II. STANDARDS OF REVIEW

In *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the Supreme Court elucidated the reviewing posture of a federal habeas court under § 2254(d):

"... the findings made by the state court system 'shall be presumed to be correct' unless one of seven conditions specifically set forth in § 2254(d) (is) found to exist by the federal habeas court. If none of those seven conditions (are) found to exist, or unless the habeas court concludes that the relevant state determination is not 'fairly supported by the record', 'the burden shall rest upon the applicant to establish by *convincing evidence* that the factual determination by the state court (is) erroneous' (emphasis supplied)." (Footnote omitted). *Sumner v. Mata, supra*, 449 U.S. at 550, 101 S.Ct. at 771, 66 L.Ed.2d at 733.

See *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

The *Sumner* court made it clear that a "hearing" on a state prisoner's habeas petition by a state trial or appellate court requires an adversarial airing of the issues

---

inal Procedure, arts. 905.3, 905.4, 905.5. The two aggravating circumstances unanimously found by the jury were that "... the offender was engaged in the perpetration or attempted perpetration of ... armed robbery" and "... the offense was committed in an especially heinous, atrocious, or cruel manner ...". Louisiana Code of Criminal Procedure, art. 905.4(a) and (g) respectively.

**2.** As a description of our quandry, we quote from Justice William Rehnquist in *Evans v. Bennett*, 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979): "There may be very good reasons for the delay, but there is also undoubtedly what Mr. Justice Holmes referred to in another context as a 'hydraulic pressure' which is brought to bear upon any judge or group of judges and inclines them to grant last-minute stays in matters of this sort just because no mortal can be totally satisfied that within the extremely short period of time allowed by such a late filing he has fully grasped the contentions of the parties and correctly resolved them. To use the technique of a last-minute filing as a sort of insurance to get at least a temporary stay when an adequate application might have been presented earlier, is, in my opinion, a tactic unworthy of our profession. Such an explanation is not a condition of the granting of this or any further stay, but the absence of it will be taken into consideration by me." *Evans v. Bennett, supra*, at 1307, 99 S.Ct. at 1485.

but no set procedures. *Sumner v. Mata, supra,* 449 U.S. at 546, 101 S.Ct. at 769, 66 L.Ed.2d at 730–731; *see Germany v. Estelle,* 639 F.2d 1301 (5th Cir., 1981). The state court's factual determinations are sufficient if evidenced by " . . . a written finding, written opinion or other reliable and adequate written indicia." *Sumner v. Mata, supra,* 449 U.S. at 546–547, 101 S.Ct. at 769, 66 L.Ed.2d at 730–731; 28 U.S.C. § 2254(d).

 The petitioner has exhausted his state remedies regarding the many claims presented to us. Most, but not all, of these claims have been decided with written findings by the Louisiana Supreme Court. The petitioner's burden of proof is not as great where no written findings support a state court's habeas decision. For both categories of claims we have endeavored to thoroughly investigate the record of the case. However, our disposition of the latter group of issues necessarily entails a more independent degree of findings under *Sumner* and the language of § 2254(d). We then are guided by the dictates of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

> "We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—an applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." (footnote omitted). *Jackson v. Virginia, supra,* at 324, 99 S.Ct. at 2792.

Based upon the record and the nature of petitioner's claims, no evidentiary hearing is necessary. See *Spinkellink v. Wainwright,* 578 F.2d 582, 590 (5th Cir., 1978).

### III. THE CLAIMS

 Several arguments raised by Baldwin fall under the rubric of "ineffectiveness of counsel" and represent mixed questions of law and fact. *U. S. v. Gray,* 565 F.2d 881, 887, n. 18 (5th Cir., 1978), *cert. denied*

435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978). The Fifth Circuit construes effectiveness of counsel as "counsel (that) is reasonably likely to render and (does) render reasonably effective counsel" considering the federal habeas court's " . . . inquiry into the actual performance of counsel in conducting the defense and a determination whether reasonably effective assistance was rendered based upon the totality of the circumstances and the entire record." *U. S. v. Gray, supra,* at 887. *See Beavers v. Balkom,* 636 F.2d 114 (5th Cir., 1981). Counsel's performance need not be errorless to satisfy a defendant's Sixth Amendment rights. *Kemp v. Leggett,* 635 F.2d 453 (5th Cir., 1981); *Beavers v. Balkom, supra,* at 3449; *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir., 1960), *modified* 289 F.2d 928 (5th Cir., 1961), *cert. denied* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). Frivolous or generalized grievances in this vein warrant no consideration by a federal habeas court. *See Sumner v. Mata, supra,* 449 U.S. at 548, 101 S.Ct. at 770, 66 L.Ed.2d at 732; *see also U. S. v. Gray, supra.*

At the outset we note that Baldwin was represented by two experienced criminal lawyers. Their work included three months of pretrial preparations during which time numerous substantive motions were urged, a five day trial and extensive post-trial litigation. Considering the evidence, the character of the defendant and the circumstances of the crime, we are compelled to find that Baldwin's counsel were effective enough to pass constitutional muster.

Baldwin raises two arguments that seek to undercut counsel's overall trial work—their failure to develop an alibi defense or proof of intoxication. Baldwin also points out counsel's ineffectiveness in not moving for a new trial after evidence allegedly corroborating his alibi became known.

 Counsel looked into the possible alibi that Baldwin was at a motel 70 miles from Monroe at the time of the offense. He continued his investigative efforts up to 5 months after the trial, until receiving information from the motel regarding Mr. Baldwin's reservations there on the night in

question. It is not the province of this court to second-guess counsel. Obviously, had an adequate alibi defense been available, it would have been developed; and had new "evidence" been of value, counsel would not have ignored it having secured the information after several months.

As for the mitigating circumstances of Baldwin's intoxication, some evidence related to drinking was elicited at trial. This court will not scrutinize counsel's decisions in choosing not to develop that evidence further. Nor will we judge such experienced counsel by hindsight, *Beckham v. Wainwright*, 639 F.2d 262 (5th Cir., 1981); *Lovett v. Florida*, 627 F.2d 706 (5th Cir., 1980), even if ". . . in retrospect it is apparent that counsel chose the wrong course." *Beckham v. Wainwright, supra*, at 265; *see Akridge v. Harper*, 545 F.2d 457 (5th Cir., 1977).

Possible defenses are almost without number. Every case has a theory of defense. Certainly counsel is not obligated to file every available defense regardless of merit, nor is he obligated to introduce evidence in support of or to clutter or confuse the record with reasons why he chose not to utilize every defense. No record could withstand such scrutiny.

■ Two arguments attacking counsel's performance focus on the absence of an investigation and presentation of a "psychiatric defense" or "psychiatric evidence of mitigating value." The Louisiana Supreme Court did not make written findings on effectiveness of counsel. However, its determination that the evidence adequately showed Baldwin to be sane and in no way mentally impaired during commission of the offense bears on the effectiveness issue.

*State v. Baldwin, supra*, at 670, 676 and 678.[3]

"The evidence does not establish that defendant was too intoxicated to realize what he was doing at the time the crime was committed, and there is ample evidence of the requisite specific intent at the time the crime was committed." *State v. Baldwin, supra*, at 676.

We view *Sumner* as applicable here and find that the record and both state courts' decisions relative to Baldwin's state of mind reveal these claims to be without merit.

■ Baldwin asserts counsel were ineffective in failing to develop and present evidence of bloodstains on his clothing that would disclose his innocence. This poses the question of whether the evidence presented at trial supported a finding of guilt beyond a reasonable doubt. No written findings were made on this point but under the *Jackson* test of the record we conclude every element of capital murder to have been proven beyond a reasonable doubt. We find no error of constitutional proportions.

Defense counsel brought a Motion for Change of Venue based upon adverse, inflammatory media coverage of the offense to be tried. A full hearing disclosed that no prejudice was found to exist in the community. The trial and appellate courts found that Baldwin's jury was impartial. *State v. Baldwin, supra*, at 669–670; Supreme Court Record (hereinafter referred to as "Record"), at Vol. 1, p. 215. There is no merit to petitioner's allegations that counsel's efforts in seeking a change of venue were deficient.

---

**3.** Psychiatric experts describe Baldwin as a "socio-pathic personality, anti-social type" who has a "character disorder". *State v. Baldwin, supra*, at 678. The record shows him to be of high intelligence. A defense theory based upon insanity would have been at best frivolous and at worst, damaging to Baldwin.

The defense relied to some extent upon a theory that Baldwin was a heavy drinker, though not thoroughly intoxicated at the time the offense was committed. The trial court reasonably found this to be insufficient grounds to allow him to change his plea from "not guilty" to "not guilty and not guilty by reason of insanity". See Louisiana Code of Criminal Procedure art. 561. That court also refused to appoint a sanity commission to evaluate the defendant. See Louisiana Code of Criminal Procedure art. 643. Defense counsel made genuine efforts to investigate a psychosis-type theory and presented as well as the situation allowed, the only evidence of mitigating value available. Compare *Beavers v. Balkom, supra*.

■ Baldwin questions defense counsel's successful challenge for cause of a prospective juror (Spatafora) who expressed an objection to the death penalty per se. Spatafora also expressed a bias favoring the testimony of Police Officers. We are confident that had this prospective juror not been challenged, Baldwin would assert that counsel were ineffective as well in light of the police-bias. Although the state did not challenge Spatafora, counsel's decision cannot be adjudged as constitutionally ineffective, if ineffective at all. Both state courts' findings of an impartial jury persuade us to dismiss this assertion.

■ Baldwin cites another incident of ineffective counsel—their failure to object to the prosecution's repeated references to a television (one of the alleged murder weapons) bearing the defendant's palm prints, where the television was not submitted into evidence. Again we are guided directly by *Jackson* and indirectly by *Sumner*. Other implements revealing the defendant's prints were submitted as murder weapons used in this horrible crime. The record does not contain written findings that deal with this particular contention but does find the evidence to convict sufficient. Our consideration of the evidence and the totality of the circumstances regarding counsel's performance convince us that no error of constitutional proportions was caused by this omission.

■ Finally, Baldwin urges that counsel's failure to respond to the District Attorney's post-sentence memorandum to the Louisiana Supreme Court, which dealt with certain specific factual data, constitutes ineffective counsel. That court had before it the entire trial record. Counsel filed an extensive and voluminous brief. A post-conviction review of all the facts and proceedings was undertaken. We find this argument to be frivolous.

Baldwin next focuses his petition on the jury instructions, alleging that defects arose during the trial court's jury charges. He lodges a constitutional attack on the statutory scheme of Louisiana Code of Criminal Procedure art. 905 *et seq.* as well. These claims will be addressed in turn.

■ The "reasonable doubt" charge at the guilt phase of petitioner's trial was properly given to the jury. *State v. Baldwin, supra,* Record, at Vol. 1, pp. 152 *et seq.* Operating under the dictates of § 2254(d) and *Sumner* we are not persuaded by the record that the Louisiana Supreme Court erred in determining that this charge was sufficient. Record at Vol. 1, p. 226. There is no merit, then, to the claim that the trial court violated Baldwin's Eighth and Fourteenth Amendment rights in its reasonable doubt instructions to the jury.

■ Petitioner asserts that the trial court failed to make clear in its sentencing phase instructions to the jury that a non-unanimous verdict (a hung jury) automatically bars the imposition of a death sentence. Louisiana Code of Criminal Procedure, art. 905.8. We disagree[4] and quote from those instructions:

> ". . . if you do not unanimously find beyond a reasonable doubt that any of the statutory aggravating circumstances existed, then life imprisonment without benefit of probation, parole or suspension of sentence is the only sentence that may be imposed."

Record at Vol. 8, p. 1698; *State v. Baldwin,* Trial Transcript (hereinafter referred to as "Transcript"), at 1151.

■ Baldwin argues that the jury was not adequately instructed as to the differences between murder one and two, the finding of at least one statutory aggravating circumstance. This is untrue. The trial court recited La.R.S. 14:30.1(B) which states the difference between the two offenses. Record at Vol. 1, p. 156. The jury's unanimous finding of two aggravating circumstances without requesting further instruc-

---

4. Compare the case at bar with *State v. Sonnier,* 379 So.2d 1336 (La.1979) and *State v. Williams,* 392 So.2d 619 (La.1980) where the juries exhibited confusion on this point and sought further instructions from the trial court. In both *Sonnier* and *Williams,* the death sentences were vacated.

**340**

tions[5] also shows the lack of error at the guilt phase.

■ Baldwin cites various other alleged deficiencies in the sentencing phase jury instructions. The trial court followed the statutory procedures. See fn. 1. We must pass, then, upon the constitutionality of Louisiana Code of Criminal Procedure, arts. 905 *et seq.* itself, which is to be presumed valid. *Gregg v. Georgia,* 428 U.S. 153, 175, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859 (1976), *rehearing denied* 429 U.S. 875, 97 S.Ct. 197, 50 L.Ed.2d 158. The Georgia legislature revamped its capital sentencing statute in response to *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The Supreme Court struck down in *Furman* an earlier capital sentencing scheme that provided inadequate safeguards against "wanton and freakish" impositions of the death sentence.

In *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), *rehearing denied* 429 U.S. 875, 97 S.Ct. 198, 50 L.Ed.2d 158, a companion case to *Gregg,* the Supreme Court validated Florida's capital sentencing laws. The *Proffitt* court said ". . . while the various factors to be considered by the sentencing authorities do not have numerical weights assigned to them, the requirements of *Furman* are satisfied when the sentencing authority's discretion is guided and channeled by requiring examination of specific factors that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition." *Proffitt v. Florida, supra,* 428 U.S. at 258, 96 S.Ct. at 2969. The Supreme Court noted approvingly that the Florida Supreme Court had interpreted and scrutinized the "especially heinous" aggravating circumstance sufficiently before validating it. *Proffitt v. Florida, supra,* at 255–256, 96 S.Ct. at 2968; *Gregg v. Georgia, supra,* 428 U.S. at 201, n. 52, 96 S.Ct. at 2938, n. 52.

Louisiana's former capital sentencing statute was struck down under the *Furman* standard in *Roberts v. Louisiana,* 428 U.S.

325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), *rehearing denied* 429 U.S. 890, 97 S.Ct. 248, 50 L.Ed.2d 173. By way of response, the Louisiana legislature passed Louisiana Code of Criminal Procedure art. 905 *et seq.* The statute is modeled upon the one approved in *Gregg v. Georgia, supra.*

The Louisiana Supreme Court has interpreted and approved Louisiana's "especially heinous" aggravating circumstance. *State v. Sonnier,* 379 So.2d 1336 (La.1979); *State v. Payton,* 361 So.2d 866 (La.1978). Should a jury misunderstand this concept, the Louisiana Supreme Court, in its automatic review under art. 905.9.1, could discover such a misapplication of that aggravating circumstance.

■ Baldwin argues that the evidence was insufficient to find the "heinous" aggravating circumstance beyond a reasonable doubt. Without elaborating upon the victim's suffering we merely cite the Louisiana Supreme Court's findings that the evidence so supported this aggravating circumstance. The standards adumbrated in *Sumner* and § 2254(d) and the record evidence leads this court to support those findings.

■ Here, armed robbery was also found as an aggravating circumstance. Art. 905.4(a). This factor was specifically charged to the jury. Record at Vol. 8, 1700; Tr. at 1153. Standing alone, the finding by the jury of the armed robbery aggravating circumstance supplies the basis for the imposition of the death penalty. Art. 905.3. The capital sentencing statute overall has also been approved by the Louisiana Supreme Court. *State v. Martin,* 376 So.2d 300 (La.1979); *State v. Williams,* 383 So.2d 369 (La.1980). The United States Supreme Court denied certiorari and a rehearing of the constitutional questions posed by petitioner relative to art. 905 *et seq., Baldwin v. Louisiana, supra; see also Prejean v. Louisiana,* 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119, *rehearing denied* 449 U.S. 1027, 101 S.Ct. 598, 66 L.Ed.2d 489 (1980). Considering all of the foregoing factors it is eminently clear that Baldwin has not met

**5.** See footnote 4.

his burden of proof of convincing this court that Louisiana Code of Criminal Procedure art. 905 *et seq.* violates his Eighth and Fourteenth Amendment rights. *See Gregg v. Georgia, supra,* 428 U.S. at 175, 96 S.Ct. at 2926.

■ Baldwin contends that the trial court's rulings relative to the insanity defense violated his federally protected rights. We approved these rulings in the context of ineffectiveness of counsel, *supra,* and applied the *Sumner* formula. *Sumner* applies even more directly here as the state court's findings, cited above, squarely addressed these claims. We will not disturb those findings.

■ Petitioner argues that the Supreme Court affirmed the capital sentence based upon a non-statutory aggravating circumstance—the post-trial psychological evaluation. Although this information was discussed by the Supreme Court, their opinion reviews the two aggravating circumstances found by the jury. Its opinion affirming the sentence focuses upon those circumstances. *See State v. Baldwin, supra,* at 677–678.

Under Louisiana law the Supreme Court is directed to automatically review capital sentences. Louisiana Code of Criminal Procedure, art. 905.9, 905.9.1; Louisiana Supreme Court Rule 28. The Florida and Georgia capital review procedures, which vary slightly from Louisiana's in their proportionality review,[6] have been declared constitutional by the United States Supreme Court. *Gregg v. Georgia, supra; Proffitt v. Florida, supra.* In Louisiana the review is district-wide and encompasses all murder one convictions. Louisiana Supreme Court Rule 28, § 4(b). In Florida and Georgia it is a state-wide review procedure of murder one convictions resulting in the death penalty, although in practice the Georgia Supreme Court does look at non-capital convictions as well. *Gregg v. Georgia, supra,* 428 U.S. at 204, 96 S.Ct. at 2939; *Proffitt v. Florida, supra,* 428 U.S. at 258–259, 96 S.Ct. at 2969.

■ The United States Supreme Court, in approving the proportionality reviews presented in *Gregg* and *Proffitt,* was persuaded by the serious treatment that Georgia and Florida Supreme Courts gave to their duties under their respective state's statutes. *Gregg v. Georgia, supra,* 428 U.S. at 204–205, 96 S.Ct. at 2939–2940; *Proffitt v. Florida, supra,* 428 U.S. at 259, 96 S.Ct. at 2969.[7] The United States Supreme Court has denied certiorari on the question of whether Louisiana's proportionality review of capital sentences is constitutional. *Prejean v. Louisiana, supra; Baldwin v. Louisiana, supra.* We are satisfied that Louisiana's Code of Criminal Procedure affords defendants full protection under the Eighth and Fourteenth Amendments.

The Louisiana Supreme Court's capital sentencing review is also more than perfunctory. Over half of the capital sentences imposed in Louisiana have been set aside. *State v. Williams,* 392 So.2d 619 (La.1980); *State v. Sonnier,* 380 So.2d 1 (La.1979); *State v. Sonnier,* 379 So.2d 1336 (La.1979); *State v. Collins,* 370 So.2d 533 (La.1979); *State v. English,* 367 So.2d 815 (La.1979).

The Louisiana Supreme Court has applied the capital sentencing review procedures rationally and consistently. Baldwin cannot assert "that the facts and circumstances of his case are so clearly undeserving of capital punishment that to impose it would be patently unjust and would shock the conscience ...". *Spinkellink v. Wainwright, supra,* at 506, n. 28.

**6.** Proportionality review generally entails a survey of first degree murder convictions with the particular conviction being reviewed to determine whether the sentence is disproportionate considering both the other convictions and the circumstances of the case on review.

**7.** Louisiana's district-wide survey may even be seen as more reasonable than a state-wide survey as all venires are pooled from the same district. Further, Louisiana's proportionality review encompasses capital and life sentences, whereas Florida's comparisons involve capital sentences only. *Proffitt v. Florida, supra,* 428 U.S. at 258–259, 96 S.Ct. at 2969.

■ Baldwin cites the state's successful challenges for cause of "approximately 20" veniremen at his trial who were opposed to the death penalty as violative of his federally protected right to a fair and impartial jury. Petitioner does not name these prospective jurors nor does he refer this court to particular passages of the voir dire testimony in support of his position. Although we will not evaluate this issue for lack of specificity, *see Sumner v. Mata, supra,* 449 U.S. at 548–549, 101 S.Ct. at 770, 66 L.Ed.2d at 732, our independent review of the voir dire transcript of the jurors selected satisfies us that an impartial jury was chosen. *See Spinkellink v. Wainwright, supra,* at 594.

■ Petitioner alleges a violation of his Sixth and Fourteenth Amendment rights occurred when the trial court failed to properly instruct the jury on sequestration rules or to insure their compliance therewith. See Louisiana Code of Criminal Procedure, art. 791. Although only five jurors were selected when the trial court gave instructions on sequestration, the entire venire panel was addressed. Record at Vol. IV, pp. 737–740; Tr. at 190–193. On the second day of trial, Baldwin's counsel brought to the attention of the court a prejudicial newspaper article that possibly biased the remaining venire panel. The court did not find any such bias. Petitioner admits that he cannot point to specific instances of juror misconduct "but asserts that an evidentiary hearing is required." In essence, no assertion of actual prejudice is made. A hearing would be nothing more than a fishing expedition. That is not the purpose of federal habeas review. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Our reading of the voir dire

testimony, as stated above, assures us that the trial court correctly ruled on the matter.[8]

■ Baldwin points out at least one short break when the jury was alleged to have been unattended as well as the dearth of admonishments by the trial judge. We find that these procedural lapses did not render the trial fundamentally unfair.[9]

■ Concerning an alleged error arising from juror Puckett's "concealment" of a friendship with the District Attorney, both the trial and reviewing courts found this claim to lack merit. *State v. Baldwin, supra,* at 672. We are not persuaded to hold otherwise.

■ The argument that the trial court erred in denying the defendant's motion for a change of venue is unfounded. We refer to our discussion of counsel's performance relative to this motion, *supra,* rather than reiterate it here in support of our view.

■ Petitioner alleges that he was subjected to an unreasonable search and seizure, in violation of his Fourth and Fourteenth Amendment rights. The trial court held a hearing on defendant's motion to suppress the evidence seized from his van and motel room. Record at Vol. III, pp. 438–515. The motion was denied. The Louisiana Supreme Court affirmed this ruling. *State v. Baldwin, supra,* at 670. Both courts found that Baldwin freely and voluntarily consented to the search. The warrant which precipitated that search was clearly supported by probable cause. Baldwin presents nothing here that convinces us to view the admission of the fruits of that search as constitutional error.

8. The one alternate juror is singled out for the court's failing to question him on the newspaper article. His testimony on voir dire reveals a bias *against* the death penalty. This directly undercuts Baldwin's claim above that all such opinionated jurors were successfully challenged for cause by the state as well as his argument that this juror may have been prosecution-prone. We see no reason to assume he was biased by the newspaper article. After all,

as an alternate, he did not deliberate on the case.

9. The Louisiana Supreme Court has set aside convictions for flagrant violations of the sequestration rules in capital cases. *State v. Parker,* 372 So.2d 1037 (La.1979); *State v. Martin,* 329 So.2d 688 (La.1976); *State v. Hunter,* 306 So.2d 710 (La.1975); *State v. Luquette,* 275 So.2d 396 (La.1973). Compare *State v. Sheppard,* 350 So.2d 615 (La.1977).

■ Finally, and without supportive evidence or authorities, Baldwin claims that Louisiana's death penalty statute as applied constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments and disproportionately affects blacks and economically depressed persons in violation of the equal protection clause. Without discussing the threshold issue of standing to raise the equal protection claim, we dismiss both contentions for lack of any serious attempt by petitioner to substantiate them.

Baldwin does not present any issues in this habeas corpus petition that warrant intervention by the federal judiciary. *See Spinkellink v. Wainwright, supra,* at 606, n. 28. Accepting as we must, the premise that a democratic society may create a rational system for the putting to death of one of its members for the murder of another,[10] we find that Timothy George Baldwin has been afforded protection of his rights under the constitution.

For all of the above reasons, it is ordered that petitioner's application for stay of execution be and it is hereby denied. It is further ordered that petitioner's application for writ of habeas corpus be and it is hereby denied. It is further ordered that the temporary stay of execution, rendered by this court on March 27, 1981, expire on May 4, 1981, at 12:00 o'clock noon.

## ON MOTION FOR CERTIFICATE OF PROBABLE CAUSE AND FOR STAY

In response to our Opinion and Judgment of April 28, 1981, in which we denied petitioner's Application for Stay of Execution and Application for Writ of Habeas Corpus, he has filed on this date the following:

(1) Application for Certificate of Probable Cause to Authorize Appeal and for Leave to Appeal in Forma Pauperis;

(2) Application for Stay of Execution Pending Appeal of Denial of Certificate of Probable Cause;

(3) Application for Stay of Execution Pending Appeal.

Baldwin cites the absence of any evidentiary hearing by this Court, the alleged violation of jury sequestration rules at trial, the "confusing" sentencing phase jury instructions and the Louisiana Supreme Court's district-wide proportionality review of his sentence (La.C.Cr.P., art. 905.9, 905.-9.1, La.S.Ct. Rule 28) as presenting sufficient bases for our issuance of a certificate of probable cause under Paragraph 3 of 28 U.S.C. § 2253.

> "An appeal may not be taken to the Court of Appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a state court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause."

■ It is clear in this circuit that a certificate of probable cause will not issue if the petition is without merit or frivolous. *Strode v. State of Miss.,* 456 F.2d 1295, 1296, (5th Cir., 1972), *rehearing denied en banc,* 456 F.2d 1296. However, myriad descriptions exist setting forth the degree of substantiality a petitioner must show to secure a certificate of probable cause. *Alexander v. Harris,* 595 F.2d 87 (2nd Cir., 1979) and cases cited therein. Justice, then Judge, Blackmun synthesized these standards, variously articulated as "any substance at all" *Chessman v. Dixon,* 275 F.2d 604, 606 (9th Cir., 1960) to "substantial constitutional question", *Player v. Steiner,* 292 F.2d 1, 2 (4th Cir., 1961), *cert. denied* 368 U.S. 959, 82 S.Ct. 404, 7 L.Ed.2d 390 (1962):

> "If there is a difference in these expressions I suspect that it is of no significance. In most of these cases relief is denied. Certainly, if a matter is frivolous, it is clearly without probable cause. Thus, the cases which speak of frivolity,

---

10. *Gregg v. Georgia, supra; Proffitt v. Florida, supra; Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), *rehearing denied* 429 U.S. 875, 97 S.Ct. 198, 50 L.Ed.2d 158;

*Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. La., supra.*

· such as those from our own circuit, would arrive at the same conclusion on a more substantive standard."

Blackmun, *Allowance of In Forma Pauperis Appeals, in § 2255, and Habeas Corpus Cases*, 43 F.R.D. 343, 352 (1967); *Alexander v. Harris, supra*, at 90.

 Considering our familiarity with the record, we hold that petitioner's claims are not deserving of appellate review and deny the issuance of a certificate of probable cause. Further, any stay pending appeals from this Court are denied. In so deciding, we realize that the impending penalty petitioner must pay is irreversible. Nonetheless, a finding of probable cause would be untenable in light of our full Opinion.

LET Plaintiff's Motion for a Certificate of Probable Cause and an Appeal in Forma Pauperis, and Motions for Stay pending appeal of our actions be and they are hereby DENIED.