Timothy George BALDWIN,
Petitioner-Appellant,

v.

Ross MAGGIO, Jr., Warden, Louisiana State Penitentiary, and William J. Guste, Jr., Attorney General of the State of Louisiana, Respondents-Appellees.

No. 82–3318.

United States Court of Appeals,
Fifth Circuit.

Sept. 1, 1983.

Gravel, Robertson & Brady, Helen G. Roberts, Alexandria, La., for petitioner-appellant.

Michael J. Fontenot, Asst. Dist. Atty., Monroe, La., for respondents-appellees.

Before RUBIN and JOHNSON, Circuit Judges, and PARKER *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

Timothy Baldwin has asked us to stay the issuance of our mandate denying his petition for habeas corpus, pending filing and disposition of his petition for a writ of certiorari to the Supreme Court. Baldwin's conviction has been reviewed by the Louisiana Supreme Court twice, once on direct appeal and again on his application for a writ of habeas corpus. He has twice sought a writ of certiorari from the United States Supreme Court and both applications have been denied. We have fully reviewed his contentions that his constitutional rights were violated and have found them meritless. His claims have by now been present-

* Chief Judge of the Middle District of Louisiana, sitting by designation.

ed to eight different state justices and judges and, including the applications to the Supreme Court, to sixteen different federal judges, in most instances more than one time. Not a single judge has found them valid. We ourselves examined them with meticulous care and found them to lack merit. We, therefore, deny the stay and explain our reasons.

A Louisiana trial court convicted Baldwin of capital murder in 1978 and sentenced him to death. Following his exhaustion of direct appellate remedies, *State v. Baldwin,* 388 So.2d 664 (La.1980), *cert. denied,* 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981), and the failure of his initial application for post-conviction relief, *Baldwin v. Blackburn,* 524 F.Supp. 332 (W.D.La.), *aff'd,* 653 F.2d 942 (5th Cir.1981), *cert. denied,* 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982), the Louisiana trial court set his execution for May 27, 1982.[1] Baldwin again sought a writ of habeas corpus from the federal district court and this application was denied. On May 24, 1982, we stayed his execution pending consideration of the merits of his claims. On May 16, 1983, we affirmed the district court's denial of habeas corpus. *Baldwin v. Maggio,* 704 F.2d 1325 (5th Cir.1983). Baldwin filed a timely petition for rehearing, thereby delaying the issuance of our mandate pending disposition of that petition, Fed.R.App.P. 41(a). We denied the petition for rehearing on June 23, 1983. Baldwin then timely filed the present request for a stay of our mandate pending his filing a petition for certiorari. Our mandate has again been withheld pending disposition of this request. Loc.R. 27.

Our evaluation of Baldwin's request is governed by well-established standards for granting a stay of a mandate pending disposition of a petition for certiorari:

> [T]here must be a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction;

there must be a significant possibility of reversal of the lower court's decision; and there must be a likelihood that irreparable harm will result if that decision is not stayed.

*Barefoot v. Estelle,* —— U.S. ——, ——, 103 S.Ct. 3383, 3395, 77 L.Ed.2d 1090 (1983) (quoting *White v. Florida,* 457 U.S. ——, 103 S.Ct. 1, 73 L.Ed.2d 1385 (1982) (Powell, Circuit Justice)). *Barefoot* emphasizes that, when a petitioner under imminent threat of execution has made a substantial showing of a denial of a federal right, he must be afforded an adequate opportunity to present the merits of his argument, and he must receive a considered decision on the merits of his claim. —— U.S. at ——, 103 S.Ct. at 3394. When the court has expedited its decisional process, a denial of a stay of execution to a petitioner presenting a "question of some substance," *id.* at —— n. 4, 103 S.Ct. at 3394 n. 4, is "tolerable" if and only if the expedited procedures provide adequate time and means for rendition of a considered judgment on the merits prior to the scheduled execution date. *Id.* at ——, 103 S.Ct. at 3394.

But, even after expedited procedures, "[s]tays of execution are not automatic pending the filing and consideration of a petition for a writ of certiorari ...." *Id.* at ——, 103 S.Ct. at 3395. "When the process of direct review—which, if a federal question is involved, includes the right to petition [the Supreme] Court for a writ of certiorari—comes to an end, a presumption of finality and legality attaches to the conviction and sentence. The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited." *Id.* at ——, 103 S.Ct. at 3391.

Here the procedure was conventional and deliberate. We have twice stayed Baldwin's execution pending review of his appeal on the merits. Moreover, we withheld our most recent opinion to have the benefit of the Supreme Court's decisions during the

---

1. Baldwin also filed an application for a writ of habeas corpus in the Louisiana District Court. This application was denied on March 26, 1981, and the Louisiana Supreme Court denied review on March 27, 1981. *See Baldwin v. Blackburn,* 524 F.Supp. at 336.

entire 1982 Term. Baldwin has also had two earlier opportunities to present to the full Supreme Court claims that his death sentence was imposed unconstitutionally. He is not seeking a stay to permit completion of *direct* review.[2]

■ Nonetheless, if Baldwin's petition for a stay establishes a reasonable probability that certiorari will be granted and a significant possibility that our decision will be reversed,[3] we must grant a stay to allow adequate time for considered deliberation of his petition for certiorari. We are, of course, acutely aware that the Supreme Court "generally places considerable weight on the decision reached by the circuit courts in these circumstances." *Barefoot*, —— U.S. at ——, 103 S.Ct. at 3395; *accord Commodity Futures Trading Commission v. British American Commodity Options Corp.*, 434 U.S. 1316, 1319, 98 S.Ct. 10, 12, 54 L.Ed.2d 28, 31 (1977) (Marshall, Circuit Justice).

■ Baldwin's request for a stay is premised on the Supreme Court's grants of certiorari in *Washington v. Strickland*, 693 F.2d 1243 (5th Cir.1982) (en banc), *cert. granted*, —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983) and *Harris v. Pulley*, 692 F.2d 1189 (9th Cir.1982) (per curiam), *cert. granted*, —— U.S. ——, 103 S.Ct. 1425, 75 L.Ed.2d 804 (1983). The en banc decision in *Washington* announced our standards for finding ineffective assistance of counsel and for determining whether the prejudice caused by counsel's ineffectiveness warrants habeas corpus relief. We applied those standards in denying Baldwin's claims of ineffective assistance. *Baldwin*, 704 F.2d at 1130, 1333–34. The propriety of those standards is squarely presented by the petition for certiorari in *Washington v. Strickland*, but that petition was filed by the state, seeking a more lenient prejudice standard than the one we applied.[4] As set forth in the footnote, the

2. *See Williams v. Missouri*, —— U.S. ——, 103 S.Ct. 3521, 77 L.Ed.2d 1282 (1983), (Blackmun, Circuit Justice).

3. Because our mandate has not yet issued, the Louisiana trial court charged with setting Baldwin's execution date has not yet resumed jurisdiction over the matter. For that reason, no execution date is presently pending. In *White v. Florida*, Justice Powell held that a petitioner under sentence of death was not entitled to a stay of execution pending filing and disposition of a petition for certiorari; there was no threat of imminent harm since no execution date had been set and the state did not contemplate that one would be set in the near future. 459 U.S. at ——, 103 S.Ct. at 1, 73 L.Ed.2d at 1385. We assume that the circumstances here warrant consideration of the stay application because Louisiana has not assured us that no execution date is likely to be set in the immediate future. Louisiana law requires the court of original jurisdiction to fix an execution date not less than thirty days nor more than forty-five days from the dissolution of our stay. La.Rev.Stat. Ann. § 15:567 (West Supp.1983). We act now to avoid the frantic urgency created by the all-too-common eleventh-hour pleas for relief. Not long ago, we criticized counsel for creating just such an emergency by failing earlier to seek a stay of the issuance of our mandate pending filing and disposition of a petition for certiorari, *Smith v. Balkcom*, 677 F.2d 20, 21 (5th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). The requisite of irreparable harm and the need for orderly delib-

eration are both satisfied by Baldwin's present attempt to forestall the rescheduling of his execution.

4. The petition for certiorari has been summarized as follows:

Ruling below:

Habeas petitioner claiming ineffective assistance of counsel must show that counsel's reasonable, strategic choice to pursue only one of several plausible defenses worked to his actual and substantial prejudice before relief will be granted; ultimate burden, however, remains on state to show that any constitutional error that did occur was harmless beyond reasonable doubt; remand is in order in this case, both to allow district court to make findings about trial counsel's alleged failure to investigate and also because of district court's improper consideration of Florida trial judge's testimony.

Questions presented: (1) Has court of appeals, in expressly overruling Florida Supreme Court and expressly rejecting en banc opinion of another federal court of appeals, *U.S. v. DeCoster*, 624 F.2d 196 (C.A.D.C.1976 [sic]), applied correct standard for review of claims of ineffective assistance of counsel? (2) Did court of appeals misapply *Fayerweather v. Ritch*, 195 U.S. 276 [25 S.Ct. 58, 49 L.Ed. 193] (1904), to exclude testimony of state trial judge, testifying as expert and as presiding judge, that new evidence offered by habeas petitioner would make no difference

state's petition for certiorari relies on the difference between our *Washington v. Strickland* standard and the more demanding standard adopted by the District of Columbia Circuit in *United States v. De-Coster,* 624 F.2d 196 (D.C.Cir.1979) (en banc).

On Baldwin's charge that counsel was ineffective, we cannot find a reasonable probability that four members of the Supreme Court will find his position sufficiently meritorious to grant certiorari. Nor do we see a significant possibility of reversal of our decision on that issue.

*Pulley* involves the question whether the Constitution requires that a court of statewide jurisdiction conduct any "proportionality review" of death sentences, and, if so, the requisites of such a review.[5] The question Baldwin presents is whether the Louisiana Supreme Court, which under the Louisiana capital punishment statute reviews death sentences meted out by juries, violates the federal Constitution by reviewing those sentences on a district-by-district rather than a statewide basis.[6] Even if the Court in *Pulley* decides that proportionality review is constitutionally required, we find no reasonable basis for concluding that the

Court will require the statewide review that we declined to require in *Williams.* This conclusion is reinforced by the denial of review, albeit now stayed, in *Williams. See supra* note 6. In short, we can find no reasonable probability of a grant of certiorari and no substantial possibility of reversal of our decision on that ground.

Petition for stay DENIED.

JOHNSON, Circuit Judge, dissenting:

The controlling legal standards utilized by this panel in affirming the district court's denial of Timothy Baldwin's petition for habeas corpus relief presently lie in legal limbo, the Supreme Court having granted certiorari in the two controlling cases that governed this panel's decision. *See Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (en banc), cert. granted, — U.S. —, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983) and *Harris v. Pulley,* 692 F.2d 1189 (9th Cir.1982) (per curiam), cert. granted, — U.S. —, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983). That the Supreme Court may in the very near future alter the standards applied in determining whether Baldwin's trial met with the re-

---

upon imposition of sentence? (3) Did court of appeals correctly reverse denial of habeas petitioner's habeas application while failing to consider or apply presumptive validity and factual findings of four state courts and federal district court? (4) Did habeas petitioner abuse habeas writ?

*Strickland v. Washington,* 51 U.S.L.W. 3831 (May 17, 1983) (No. 82–1554).

5. The petition for certiorari has been summarized as follows:

Ruling below:

As interpreted in *Gregg v. Georgia,* 428 U.S. 153 [96 S.Ct. 2909, 49 L.Ed.2d 859] (1976), and *Proffitt v. Florida,* 428 U.S. 242 [96 S.Ct. 2960, 49 L.Ed.2d 913] (1976), Constitution requires as prerequisite for imposition of death penalty that court conduct "proportionality review" for purpose of comparing defendant's sentence to other sentences imposed for similar crimes.

Questions presented: (1) Does Constitution, in addition to procedures whereby trial court and jury impose death sentence, require any specific form of "proportionality review" by court of statewide jurisdiction prior to execu-

tion of state death judgment? (2) If so, what is constitutionally required focus, scope, and procedural structure of such review?

*Pulley v. Harris,* 51 U.S.L.W. 3590 (Feb. 15, 1983) (No. 82–1095).

6. Our consideration of that claim was foreclosed by the en banc court's rejection of an identical claim in *Williams v. Maggio,* 679 F.2d 381, 394–95 (5th Cir.1980) (en banc), cert. denied, — U.S. —, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983). *See Baldwin,* 704 F.2d at 1326 n. 2. Justice Brennan stayed the effect of the denial of certiorari in *Williams* by order of July 14, 1983.

We note that Justice Dennis of the Louisiana Supreme Court, who is of the view that statewide rather than district-by-district review is constitutionally required, nevertheless concurred in the court's affirmance of Baldwin's sentence. He stated: "[T]he extraordinary deliberateness and brutality of this murder of an 84-year old woman for her valuables clearly justifies the death penalty without need of extensive comparison with other offenses." *State v. Baldwin,* 388 So.2d at 678 (Dennis, J., concurring).

quirements of basic constitutional law seems inarguable.

What this Court has before it for consideration should be clearly understood: it is a request for a stay of the issuance of this Court's mandate pending *only* the filing and disposition of his petition *for a writ of* certiorari to the Supreme Court. The temporary nature of the requested stay is self-evident. This being true, I simply cannot sanction Timothy Baldwin's execution knowing that the Supreme Court may, in the very near future, alter or reject the constitutional standards applied in denying Baldwin's petition. This Court should not permit the ultimate punishment to be exacted when live, fundamental constitutional issues remain unresolved in a defendant's appeal. Accordingly, I respectfully dissent from my colleagues' denial of Timothy Baldwin's request for a stay of our mandate pending filing and disposition of his petition for a writ of certiorari in the Supreme Court.

*Barefoot v. Estelle,* —— U.S. ——, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) teaches that when a petitioner under imminent threat of execution has made a substantial showing of a denial of a federal right, he must be afforded an adequate opportunity to present the merits of his argument, and he must receive a considered decision on the merits of his claim. *Id.* at ——, 103 S.Ct. at 3394. A denial of a stay of execution to a petitioner presenting a "question of some substance," *ibid.* at note 4, is "tolerable," *ibid.,* if and only if expedited procedures provide adequate time and means for rendition of a considered judgment on the merits prior to the scheduled execution date. *Ibid.*

Baldwin's request is, of course, in a different posture than was Barefoot's: Baldwin has received the plenary review of his appeal of right to this Court that was at stake in *Barefoot,* and now requests a stay in order to seek the discretionary review of the Supreme Court. But the constitutional imperative—that the State cannot take a life in the name of justice until justice has been given to the one condemned—does not melt away as the procedural posture of the petition changes. Orderly consideration of the substantial constitutional questions remaining after plenary appellate review is, like a thorough and considered decision in the Court of Appeals itself, requisite to the administration of justice under law.

Baldwin's petition for a stay is premised on the Supreme Court's grants of certiorari in *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (Unit B) *(en banc),* cert. granted, —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983) and *Pulley v. Harris,* 692 F.2d 1189 (9th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983). The *en banc* decision in *Washington* announced our standards for finding ineffective assistance of counsel and for determining whether prejudice accruing on ineffective assistance warrants habeas corpus relief. Our refusal to accept Baldwin's two claims of ineffective assistance of counsel turned in each instance on our decision that he had failed to show the "actual, substantial prejudice" demanded by *Washington* to establish a constitutional defect in the adequacy of representation.[1] The propriety of that test is squarely presented by the petition for certiorari.[2]

---

1. *Washington v. Strickland*'s standards were central to our decision. Indeed, we delayed our decision of Baldwin's appeal pending decision of that case and solicited supplemental briefs from the parties on its significance to the issues under review.

2. The petition for certiorari has been summarized as follows:

Ruling below:

Habeas petitioner claiming ineffective assistance of counsel must show that counsel's reasonable, strategic choice to pursue only one of several plausible defenses worked to

his actual and substantial prejudice before relief will be granted; ultimate burden, however, remains on state to show that any constitutional error that did occur was harmless beyond reasonable doubt; remand is in order in this case, both to allow district court to make findings about trial counsel's alleged failure to investigate and also because of district court's improper consideration of Florida trial judge's testimony.

Questions presented: (1) Has court of appeals, in expressly overruling Florida Supreme Court and expressly rejecting en banc opinion of another federal court of appeals,

*Pulley* involves questions of the constitutional necessity of a "proportionality review" of death sentences by a court of state-wide jurisdiction, and the requisites of such a review.[3] In his petition for habeas corpus, Baldwin presented a similar question, *i.e.*, that the Louisiana Supreme Court's practice of conducting its proportionality reviews of sentences meted out in capital murder cases on a district-by-district basis fails to satisfy the eighth and fourteenth amendments to the United States Constitution. He conceded on appeal that our consideration of that claim was foreclosed by our earlier rejection *en banc* of the identical claim in *Williams v. Maggio,* 679 F.2d 381, 394–95 (5th Cir.) (*en banc*), *cert. denied,* —— U.S. ——, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983). *Baldwin v. Maggio,* 704 F.2d at 1326 n. 1.

I think that the presence of these issues—particularly the propriety of *Washington*'s standards for evaluating claims of ineffective assistance of counsel—before the Supreme Court requires that we stay our mandate pending filing and disposition of a petition for certiorari, *see ante* note 1. Though the Supreme Court may not, in the course of its decisions of *Washington* and *Pulley,* reach the issues implicated in Baldwin's case, I think that its grant of review of those petitions requires a present conclusion that all of the issues the petitions raise are "cert-worthy." The questions of law

> *U.S. v. DeCoster,* 624 F.2d 196 (C.A.D.C. 1976), applied correct standard for review of claims of ineffective assistance of counsel? (2) Did court of appeals misapply *Fayerweather v. Ritch,* 195 U.S. 276 [25 S.Ct. 58, 49 L.Ed. 193] (1904), to exclude testimony of state trial judge, testifying as expert and as presiding judge, that new evidence offered by habeas petitioner would make no difference upon imposition of sentence? (3) Did court of appeals correctly reverse denial of habeas petitioner's habeas application while failing to consider or apply presumptive validity and factual findings of four state courts and federal district court? (4) Did habeas petitioner abuse habeas writ?
> *Strickland v. Washington,* 51 U.S.L.W. 3831 (U.S. May 17, 1983) (No. 82–1554).

**3.** The petition for certiorari has been summarized as follows:
> Ruling below:

presented by those cases are not so clearly settled that I can, with confidence, predict that the Court's decision will endorse our own. Acceleration of an admittedly deliberate appellate process should not come at the expense of the defendant's life, when fundamental constitutional issues remain unresolved in his case. As Judge Goldberg noted so poignantly concurring in *Bass v. Estelle,* 696 F.2d 1154, 1161 (5th Cir.1983), "There can be no writs of habeas corpus from a casket."

> As interpreted in *Gregg v. Georgia,* 428 U.S. 153 [96 S.Ct. 2909, 49 L.Ed.2d 859] (1976), and *Proffitt v. Florida,* 428 U.S. 242 [96 S.Ct. 2960, 49 L.Ed.2d 913] (1976), Constitution requires as prerequisite for imposition of death penalty that court conduct "proportionality review" for purpose of comparing defendant's sentence to other sentences imposed for similar crimes.
> Questions presented: (1) Does Constitution, in addition to procedures whereby trial court and jury impose death sentence, require any specific form of "proportionality review" by court of statewide jurisdiction prior to execution of state death judgment? (2) If so, what is constitutionally required focus, scope, and procedural structure of such review?
> *Pulley v. Harris,* 51 U.S.L.W. 3590 (U.S. Feb. 15, 1983) (No. 82–1095).