Simons, J.
(dissenting in part). I concur in parts I and II of the majority opinion which hold that defendant’s guilt was established beyond a reasonable doubt in proceedings free of error. I dissent, however, from part III of the majority opinion because defendant has failed to establish that section 60.06 of the Penal Law fixing the penalty for first degree murder (Penal Law, § 125.27, subd 1, par [a], cl [iii]) is unconstitutional. I would, therefore, affirm the judgment.
The legislative power of this State is vested in the Senate and the Assembly. Our task as Judges is, quite simply, to determine whether the Legislature in exercising that power has violated the prohibition against “cruel and unusual punishments” found in the Eighth Amendment to the Federal Constitution, which is made applicable to the States through the Fourteenth Amendment (Robinson v California, 370 US 660). In doing so we are constrained by the strong presumption that the statute is constitutional and we may invalidate it only as a last resort (see People v Davis, 43 NY2d 17, 30; People v Nieves, 36 NY2d 396, 400; Matter of Van Berkel v Power, 16 NY2d 37, 40). The presumption arises because the Legislature has had the opportunity to investigate and study the need for the legislation and it has found circumstances warranting its enactment (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358). Thus, a heavy burden rests on one attacking the statute to demonstrate that the legislators, as the elected representatives of the people, have exceeded their constitutional powers (see Gregg v Georgia, 428 US 153, 175; see, also, People v Scott, 26 NY2d 286, 291; People v Pagnotta, 25 NY2d 333, 337; Matter of Van Berkel v Power, supra; see People v Whidden, 51 NY2d 457, 462). Defendant has failed to do so.
It is now beyond question that, as a substantive matter, imposition of the death penalty does not violate the “cruel and unusual punishments” provision of the Eighth Amendment. Although capital punishment is not unconstitutional per se, it may become so if imposed when the nature of the crime involved does not warrant capital punishment (Enmund v Florida, 458 US 782 [felony murder]; Coker v Georgia, 433 US 584 [rape]; see, also, Wood- *82 son v North Carolina, 428 US 280, 286) or when the procedure by which it is imposed does not meet constitutional standards. Because capital punishment may be imposed for intentional murder, our inquiry is directed to the procedural aspects of the New York statute and whether they are constitutionally sufficient.
The general principle is that statutes permitting capital punishment must insure that it is not imposed “wantonly” or “freakishly” but in an objective, evenhanded and substantially rational way (Furman v Georgia, 408 US 238, 310 [Stewart, J., concurring], reh den 409 US 902; see, also, Gregg v Georgia, 428 US 153, 188 [plurality opn], supra). The statute must permit individualized determination to insure that the penalty fits not only the crime but also the criminal. The jury should consider the aggravating details of the crime (see, e.g., Lockett v Ohio, 438 US 586; Gregg v Georgia, supra; Proffitt v Florida, 428 US 242; Jurek v Texas, 428 US 262) and also relevant factors mitigating the offender’s punishment (see Eddings v Oklahoma, 455 US 104; Lockett v Ohio, supra; Woodson v North Carolina, 428 US 280, 303-305, supra). The rule to be derived from the cases is this: State Legislatures have discretion to determine the scope of the sentences to be imposed for violation of their criminal statutes provided that (1) capital punishment is not imposed for a broad category of homicidal offenses, (2) individual consideration is given to the offender and (3) the statute, except in the rarest type of cases, permits the jury to consider any pertinent mitigating factors (see Lockett v Ohio, 438 US 586, 603-604, supra; Woodson v North Carolina, 428 US 280, 287, 304, supra).
These past decisions are of limited value, however, because this appeal presents one of those rare homicide cases which the Supreme Court has not addressed.[1] Indeed the court’s decisions have specifically excepted from their reasoning and holdings mandatory capital punishment for a murder committed by a prisoner or escapee serving a life sentence (see Lockett v Ohio, supra, at p 604, n 11; Roberts [Harry] Louisiana, 431 US 633, 637, n 5; Roberts [Stanislaus] v Louisiana, 428 US 325, 334, n 9; Woodson v North *83 Carolina, supra, at p 287, n 7, and at p 292, n 25; Gregg v Georgia, supra, at p 187; but see Eddings v Oklahoma, supra). And so have we (see People v Davis, 43 NY2d 17, 34, n 3, supra). Thus, our task is to analyze sections 60.06 and 125.27 bearing in mind that we are addressing an issue the court has not yet passed upon involving a particularized crime committed by a singularly circumstanced individual.
New York’s statute provides that a prisoner serving a sentence of life imprisonment or an indeterminate term of 15 or more years to life who intentionally causes the death of another person is guilty of first degree murder (Penal Law, § 125.27, subd 1, par [a], cl [iii]) and shall be sentenced to death (Penal Law, § 60.06). A finding of guilt must rest on evidence which includes proof that the defendant was more than 18 years of age at the time of the crime (Penal Law, § 125.27, subd 1, par [b]). Thus, the statute meets the first two constitutional requirements because it covers only intentional homicide and it includes within the definition of the offense individualized consideration of the offender: he must be an adult who has previously committed a crime of sufficient magnitude to warrant a maximum sentence of life imprisonment.[2] Furthermore, although the statute mandates execution, it does not violate the third condition because it defines a rare type of crime and its definition meets precisely the standard suggested for such cases stated by the Supreme Court plurality in Woodson v North Carolina (428 US 280, 287, n 7, supra), “an extremely narrow category of homicide, such as murder by a prisoner serving a life sentence, defined in large part in terms of the character or record of the offender.” The court has repeatedly stated that in such cases the jury need not be required to consider mitigating factors.
The Chief Judge would affirm on that ground alone, holding that the necessary import of the Supreme Court’s statements indicates that the Legislature need not provide *84 for consideration of mitigating factors concerning the defendant in this narrow category of homicide. That may indeed be so, but we need not decide the point for our statutory scheme contains several limiting or ameliorative factors which may be considered before capital punishment is imposed. This legislative determination that the statute should not be mandatory in an absolute sense certainly does not detract from its constitutionality and indeed supports the conclusion that the statute is constitutional. Thus, there may be no conviction for first degree murder if the defendant was acting under extreme emotional disturbance or was aiding another to commit suicide (Penal Law, § 125.27, subd 2, pars [a], [b]), if his conduct was justified (Penal Law, art 35), if he acted under duress (Penal Law, § 40.00), if he lacked capacity (Penal Law, § 30.05), or if he was intoxicated at the time (Penal Law, § 15.25). These statutory defenses are precisely the same circumstances, save two, as those suggested in mitigation by the Supreme Court in Roberts (Harry) v Louisiana (431 US 633, 836-637, supra), and recommended in the Model Penal Code (ALI Model Penal Code, § 210.6 [Proposed Official Draft, 1962], as cited in Gregg v Georgia, 428 US 153, 193-194, n 44, supra). Indeed our statutory scheme makes explicit more ameliorative factors than did the statutes approved in Proffitt v Florida (428 US 242, 248, n 6, supra) and Jurek v Texas (428 US 262,271-273, supra). The two circumstances listed in the Model Penal Code and the Roberts decision which are not expressly included in our statute are a lack of prior criminal experience and accomplice liability. Neither applies here. Before a defendant may be subject to prosecution under section 125.27, he must have been convicted previously of a crime calling for imposition of a life sentence and he must murder while serving his sentence for that predicate crime. Thus, it is impossible for a person without any prior serious criminal involvement to be convicted of first degree murder under this subdivision. Indeed, this defendant had been twice previously convicted of murder and once of a rape-kidnapping. In each instance the sentencing Judge had before him presentence reports showing defendant’s prior criminal, social and medical history (CPL 390.30, 390.40) and in each case the court *85 sentenced defendant to the maximum term permitted by law. In addition, the record shows that defendant has acknowledged responsibility for three other homicides and a second rape. Prosecution was never started for one of those additional murders and the prosecution of the other two was discontinued because conviction would serve no purpose: defendant’s sentence could not be increased beyond the sentence he was already serving because under the former statute the minimum terms merged. Manifestly, defendant had an extensive and serious criminal record at the time of this, his sixth, homicide. Nor must accomplice liability be considered as a necessary mitigating factor and defendant does not claim that it should. Thus, unlike the North Carolina statute which authorized capital punishment for murder generally and which was invalidated in Woodson because it did not provide for consideration of any mitigating circumstances, New York’s statute not only comes within the exception stated in Woodson, but it also provides several bases consonant with the rule stated in the Model Penal Code and other statutes approved by the Supreme Court cases on which the crime may be reduced to a noncapital offense. The New York Legislature has followed the general prescription of the Supreme Court’s rules. It has made the permitted determination that because of the nature of this crime and the character of the offender, the mandatory death sentence may be imposed because of the nature of the offense and that extenuating circumstances are to be considered as defenses during the trial, not at a separate hearing. The Legislature’s decision to leave the burden on the defendant to prove such circumstances as affirmative defenses, rather than to allow for their consideration as mitigating circumstances following a determination of guilt, finds support in the singular nature of the crime and the character and record of the criminals to which the statute applies, and in the exemption contained in People v Davis (43 NY2d 17, supra) and the Supreme Court decisions of such crimes from the general rule.
It should also be noted that New York courts when instructing a jury must submit for the jury’s consideration any lesser included offenses (see CPL 300.50; People v *86 Glover, 57 NY2d 61), and that a defendant in a capital case may appeal his conviction directly to this court which then reviews both the law and facts and determines whether defendant’s guilt has been established beyond a reasonable doubt (NY Const, art VI, § 3, subd b; CPL 450.70). These are important additional safeguards against the unbridled jury discretion and a verdict infected by caprice.
The majority contends that Lockett v Ohio (438 US 586, supra) controls this appeal. It sees no facts in the case significant enough to distinguish it from the accomplice liability involved in Lockett and although it notes that the court expressly reserved from that ruling a murder committed by one serving a life sentence, it holds that the reservation does not apply to this case because defendant was serving a statutory life sentence not a sentence for a term of his natural life (majority opn, at pp 75-76). No legal basis is given for that restrictive interpretation of the court’s language.
Relying upon Lockett (see, also, Eddings v Oklahoma, 455 US 104, supra), the majority fault the New York statute because it does not permit the jury to consider mitigating factors to insure that the punishment is appropriate to this defendant. In Lockett the defendant was sentenced to death for the felony murder of a pawn broker accidentally killed by her confederates during the course of a robbery. She was outside the shop at the time of the robbery with the getaway car and her guilt rested on accomplice liability. At the time of her conviction, the defendant was 21 years of age, of low normal intelligence and had never been in serious trouble with the law before. Psychologists rated her chances at rehabilitation as favorable. She challenged the Ohio sentencing statute because it did not permit the Judge to consider her character, prior record, age, lack of specific intent to cause death, and her relatively minor part in the crime in mitigation of sentence. The Supreme Court, in a plurality opinion, declared the Ohio statute unconstitutional because it restricted the sentencer’s consideration of mitigating factors CLockett v Ohio, supra, at p 604). The Lockett holding has left in doubt prior decisions which appear to conflict with it (see, e.g., Proffitt v Florida, 428 US 242, supra; Jurek v Texas, 428 *87 US 262, supra). It should be obvious that it does not control this case because it is factually distinguishable from it and because the Supreme Court expressly reserved the application of that decision by stating that it did not pass on “whether the need to deter certain kinds of homicide would justify a mandatory death sentence as, for example, when a prisoner — or escapee — under a life sentence is found guilty of murder” (Lockett v Ohio, 438 US 586, 604, n 11, supra). The Supreme Court has repeatedly included this exception in its decisions on capital punishment (see supra, at pp 82-83) and we should not disregard it or strain to read more or less into the court’s language to justify striking down this statute.
Nevertheless, the majority is persuaded by that decision that it was beyond the power of the Legislature to enact this statute requiring mandatory capital punishment because it suggests that retribution fails as a consideration in capital cases and because it finds that any deterrent effect of the statute in cases of less than life imprisonment is served by discretionary sentencing. The majority recognizes capital punishment is not unconstitutional per se because it may be the only deterrent to some crimes, but then, turning the reasoning around, it argues that mandatory capital punishment is not constitutional in this case because it is not the only deterrent available. It is not up to us, however, to reinvestigate the legislative determination that the death penalty is the only deterrent available for murders committed by prisoners serving life sentences. Once the Legislature decides to enact a statute calling for capital punishment, its validity rests upon the procedural safeguards built into it. Thus, the Supreme Court stated in Gregg that it is for the Legislature to evaluate the deterrent and retributive value of the legislation:
“The value of capital punishment as a deterrent of crime is a complex factual issue the resolution of which properly rests with the legislatures, which can evaluate the results of statistical studies in terms of their own local conditions and with a flexibility of approach that is not available to the courts.
* * *
*88 “In sum, we cannot say that the judgment of the Georgia Legislature that capital punishment may be necessary in some cases is clearly wrong. Considerations of federalism, as well as respect for the ability of a legislature to evaluate, in terms of its particular State, the moral consensus concerning the death penalty and its social utility as a sanction, require us to conclude, in the absence of more convincing evidence, that the infliction of death as a punishment for murder is not without justification and thus is not unconstitutionally severe.
“Finally, we must consider whether the punishment of death is disproportionate in relation to the crime for which it is imposed * * * we are concerned here only with the imposition of capital punishment for the crime of murder, and when a life has been taken deliberately by the offender, we cannot say that the punishment is invariably disproportionate to the crime. It is an extreme sanction, suitable to the most extreme of crimes” (Gregg v Georgia, 428 US 153, 186-187, supra).
Notwithstanding this language, the majority now evaluates the retributive and deterrent values of capital punishment and finds the penalty mandated by the New York statute disproportionate to defendant’s crime. I know of no other punishment which this court has struck down as disproportionate (see People v Broadie, 37 NY2d 100, 111).
Briefly, and without accepting the majority’s premise, it should be pointed out that the retributive value and deterrent effect of capital punishment are valid sentencing considerations which the Legislature was entitled to weigh and accept when enacting the statute (see Furman v Georgia, 408 US 238, 394-395, supra; Roberts [Stanislaus] v Louisiana, 428 US 325, 353-355 [White, J., dissenting], supra; People v McConnell, 49 NY2d 340, 346; People v Suitte, 90 AD2d 80, 83-85; see, also. People u Gittelson, 18 NY2d 427, 432). Perhaps retribution when used in the sense of revenge is losing favor with the courts, as the majority contends (see LaFave & Scott, Criminal Law, § 5, p 24), but it is accepted theory that an offender should receive a deserved punishment according to the gravity of his offense as the community perceives it. In that sense, i.e., society’s response to the crime, not to the criminal, *89 retribution remains an important penological consideration. Indeed, the concept of retribution supplies much of the rationale for the current nationwide movement towards determinant sentencing — a fixed period of incarceration for offenses, lengthened or shortened minimally by consideration of a limited number of aggravating and mitigating factors (see Pugsley, Retributivism: A Just Basis for Criminal Sentences, 7 Hofstra L Rev 379). But critical to this appeal is the fact that retribution has nothing to do with the requirements of constitutional law and mandatory capital punishment may be imposed for purposes of retribution without violating constitutional precepts by recognizing the serious nature of the crime and the individual characteristics of the defendant.
Similarly, the majority challenges the deterrent effect of the mandatory sentence because defendant may be punished otherwise for the commission of this homicide by loss of parole or by pardon. To repeat, deterrence is not an issue for the court, the Legislature has made that policy decision and it is not charged with the burden of enacting a statute which invariably results in the least severe penalty having some deterrent effect (Gregg v Georgia, 428 US 153, 175, supra). But to the extent that the necessity of the statute as a deterrent may be considered to be before us, it should be noted that there are various forms of deterrence, specific deterrence to incapacitate the offender from repeating this or other crimes, and general deterrence, to deter others from committing similar crimes. The statute undeniably serves the function of specific deterrence in this case. It prevents this defendant who has committed six murders and two rapes from killing again. The general deterrent effects of capital punishment on the population as a whole, i.e., the prison population, is a subject on which reasonable minds can differ but it is significant that the majority of American jurisdictions after studying the matter and re-o viewing the available evidence on the subject have decided certain crimes warrant capital punishment and this record contains no evidence to establish otherwise. Because the available evidence is unpersuasive and because reasonable minds may differ about it, the subject is one appropriately left to the Legislature (see Gregg v Georgia, 428 US 153, *90 179, 186-187, supra; and see People v Broadie, 37 NY2d 100, 117, supra).
Several other grounds are urged for invalidating the statute.
The majority notes that homicide is not the only crime which may result in a life sentence in New York and that the statute may apply to many whose predicate convictions are less egregious than are this defendant’s. Insofar as that may be so, those cases are not before us. We are required to decide whether the statute is constitutional as applied to this defendant. He, of course, may argue that the statute is unduly restrictive as to him but whether it is unconstitutional when applied to others must await another day (see New York v Ferber, 458 US 747, 767; Broadrick v Oklahoma, 413 US 601, 610; United States v Raines, 362 US 17, 21; People v Parker, 41 NY2d 21, 24; People v Drayton, 39 NY2d 580; People v Broadie, 37 NY2d 100, 109, supra).
Next, the majority contends that mandatory capital punishment is wanton or arbitrary for a number of reasons: possible unevenness in the application and enforcement of the statute; the chance that the defendant may not be caught; the possibility of a plea bargain to a lesser charge or the possibility that the petit jury may refuse to convict (majority opn, at p 77). These arguments have been made and rejected before (see, e.g., Gregg v Georgia, 428 US 153, 199, supra; Proffitt v Florida, 428 US 242, 254, supra; Jurek v Texas, 428 US 262, 274, supra; see, also, Roberts [Stanislaus] v Louisiana, 428 US 325, 348-349 [White, J., dissenting], supra).
Finally, the majority urges that the trial should be bifurcated to permit the submission of mitigating circumstances at a sentencing hearing rather than requiring them to be asserted as defenses at trial. Mandatory sentences are not necessarily unconstitutional, however (see Rummel v Estelle, 445 US 263; People v Broadie, 37 NY2d 100, supra; Matter of Dodd v Martin, 248 NY 394, 398-399; People v Gowasky, 244 NY 451, 466), and although bifurcation may be a desirable procedure, it is not required, even in cases less serious than this one, involving murderers who do not kill while serving a life sentence (see Lockett v Ohio, 438 US 586, 605, supra; Gregg v Georgia, 428 US *91 153, 195, supra; see, also, People v Davis, 43 NY2d 17, 34-35, supra).
The disagreement in this court, as in the Supreme Court (see, e.g., Lockett v Ohio, 438 US 586, 628-636 [Rehnquist, J., dissenting in part], supra; Roberts [Stanislaus] v Louisiana, 428 US 325, 356-358 [White, J., dissenting], supra), is the extent to which mitigating factors must be considered by the court or jury before capital punishment may be imposed. The majority hold that mandatory sentencing is not constitutionally permissible even in a case involving a murder by a prisoner serving a life sentence, that there must be a discretionary procedure which leaves the sentencer free to consider all factors mitigating defendant’s crime. The Supreme Court has not adopted that rule. Indeed, the court has scarcely been able to gather a majority for the rule that the sentencer must consider any relevant mitigating factors in cases involving persons not serving a life sentence who are convicted of murder. It did so only once, in a division of the court that spoke more to the kinetics of the collegial decision-making process than certainty in the law (see Eddings v Oklahoma, 455 US 104, supra). Surely, considering this state of the law defendant has not carried his burden of proving that the statute is unconstitutional and this court should not declare it so.
There is a great temptation for Judges to tinker with statutes to satisfy their own likes. Many, if given the opportunity to do so, might abolish capital punishment altogether or create a different sentencing procedure. But respect for fundamental rules of separation of powers, our positions as appointed Judges and the legislators’ roles as the elected representatives of the people, requires that we accept the legislative will. We must take the statute as we find it and interpret it according to existing constitutional standards. This statute meets those standards, at least defendant has not met his burden of establishing otherwise, and we should not “substitute [our] judgment for that of the Legislature as to wisdom and expediency of the legislation” (People v Davis, 43 NY2d 17, 30, supra).

. At oral argument counsel could recall no similar New York homicide and only one foreign case has been called to our attention (see State v Cline, 121 RI 299).

. These elements distinguish this subdivision of section 125.27 from the subdivision invalidated in People v Davis (43 NY2d 17). The Davis decision actually involved two appeals, one from a conviction for killing a police officer, and the other for killing a correction officer. Defendant Davis’ judgment of conviction was modified because of a failure of proof. In the companion James case, defendant was convicted of murdering a correction officer and sentenced to death. We declared the subdivision involved in that case unconstitutional because, unlike this subdivision, it failed to take into account the character of the offender (Penal Law, § 125.27, subd 1, par [a], cl [ii]).